The next matter on our calendar is Mario Franco versus police officer Gonzales and others. I need you to do something for me, but hand this out and come back. Thank you. Thank you. On my desk is a manila folder. Will you go into the roving room and bring it to me? Thanks. Good morning. Good morning, Your Honor. My name is Mary D'Agostino and I represent Officer Sean Kelly and Officer John Gonzales, the appellants in this matter. As you know, this is an interlocutory appeal from a district court decision denying qualified immunity to the defendant officers. In that decision, the court concluded that there was a genuine dispute as to whether Officer Gonzales gave two separate verbal orders to disperse. That decision was incorrect. I'm mindful of the procedural posture of this case that the court must accept plaintiff's versions of the facts as true. That does not mean that the court is required to accept assertions that are conclusory, speculative, or otherwise unsupported by the record. What this boils down to is that the court accepted plaintiff's unsupported assertion and disregarded uncontroverted assertions that whether dispersal orders were given is reasonably in dispute here. Well, but isn't the question here that when somebody says, I have not heard, that is evidence of whether you spoke. And they say, I have not heard because you did not speak. Your clients say, we did speak. Now, how much evidence is it you have not heard? There are some circumstances where that evidence is so minimally related, there's so much evidence that the people you are representing spoke, that we can say that that isn't there. But Judge Scullin seemed to think that in this case, there was enough evidence in saying, I hadn't heard, to indicate that maybe, maybe, your clients didn't speak. Now, that's a question of fact. I think that's speculative, Your Honor, with all due respect. And you have to keep in mind the record here as a whole. Officer Gonzalez testified that when he turned on to Victoria Place, he made two separate orders to disperse over loudspeaker. What I've referred to as dispersal order number one in the brief. And after that was done, by and large, everyone at that party that was congregated in the middle of Victoria Place, on the sidewalks, on the streets, 70-plus people, they began to disperse. Did you bring in, at this stage, statements by other people who say we heard? I mean, other people placed, like them, who say we heard. Now, you know, if you had, then the statement by their part we didn't hear wouldn't amount to much. But you're saying your clients said we spoke. That's quite likely. I'm inclined to think that a fact finder will probably agree with you. But that isn't the question before us. The question is, is there a dispute? Correct, Your Honor. The question is whether there's a dispute. And, no, we didn't bring in other statements from non-interested parties indicating that they heard the order to disperse. But on the same token, plaintiff's counsel also didn't submit an affidavit indicating that the statement wasn't made. All you have is testimony from people that are friends with plaintiffs indicating I didn't hear it, I didn't hear it, I didn't hear it. And they may not be believable. But that's a fact question. Let me tell you what is your strongest argument, actually. Your strongest argument is Elijah, I believe, saying that the other person said something like, you guys don't fucking listen or something like that. Now, that statement is a suggestion that the policeman thought that he spoke. So that doesn't tell us that he spoke in a way that people were inclined to hear, were able to hear. But that's the strongest, actually, that's the strongest statement on your side. But I'm not sure that that's enough to remove it from a fact question. I understand what you're saying, Your Honor, and I agree that is strong evidence that it was probably said. But given this procedural posture, and we're here on qualified immunity, the relevant question is the officer's perception, not plaintiff's perception. So while there may be an issue in terms of criminal liability, what we're talking about here is qualified immunity. So what that means is you have to look at what the officer perceived. And again, he turned on to Victoria Place, he gave dispersal order number one, and at that point the party began to disperse. If you believe that the officers gave a dispersal order that these people would have been able to hear, then you're home. But that's the question. Is that a factual question or not? But what you're saying, Your Honor, is if you believe that statement. My point is that there is no evidence controverting the fact that the officer made the statement, that he made two separate dispersal orders. The evidence that plaintiff is pointing to is that they didn't hear it. To say that you can't believe the officer's statement is making a credibility determination that's not permissible in summary judgment. If he wanted to create an issue of fact, he could have submitted an affidavit from his client indicating, I didn't hear it, because that's what he testified to during his deposition, but also that it wasn't said. And that sort of evidence isn't currently before the court. What you have is the officer, Gonzalez... Wait a second. Are you saying that he has to posit that it wasn't said? The only way to challenge whether it was made at all is to say, I didn't hear anything. And that's what they adduced other witnesses, they all saying they didn't hear anything. And that's what I think Judge Calabresi is striving at, is that that is sufficient to raise a question as to whether, in fact, a dispersal order was given. But again, you have to look at the officer's perception. He perceived 70 other people... Well, he said that he gave such an instruction, but we are not required to accept that as evidence that it actually happened. I believe that seems to be getting into the realm of making a credibility determination of whether the officer can be believed. But it's not a question for the jury? But when you have undisputed evidence, then it's not a question for the jury. The plaintiff said, I didn't hear it. Isn't that a dispute? That is evidence that it may not have been heard. That isn't evidence that it was not said. What other kind of evidence could there be? What better evidence is there that something wasn't said than that people didn't hear it? That certainly is... I mean, if you want to... I want to say, I'm sorry, I don't think you spoke. The first thing I'm going to say is because I didn't hear. Now, is that enough evidence? Is that convincing evidence? Well, there may even be situations where that evidence is when it's so obvious that you spoke that that is indeed not. But the question is, is that so in this case? Now, there are other cases where people simply said, I didn't hear. And in their claim, they didn't say, I didn't hear and I don't believe you spoke. But that's a failure of them to make an argument in some of these other cases. Since you stated the principle at the start of your argument that in order to get qualified immunity, you have to accept as true everything the plaintiff alleges, where do you go from there? But still, what plaintiff alleges has to be supported by the record. But this is the plaintiff's perception. I don't know how you support it except you say, I didn't hear it. It will be up to a jury to decide if he's believable or the police officer is more believable. I understand what you're saying, but you're talking about plaintiff's perception. That's not relevant to the qualified immunity inquiry. The plaintiff can only report on his own perceptions. I didn't hear it. He can't say what other people heard or didn't hear. He can only report on his own perceptions. And it's Officer Gonzalez's perception that is relevant to the qualified immunity inquiry, meaning whether there was arguable probable cause at that time. I see my time is up. Thank you, counsel. We'll hear from appellee. First of all, excuse the coughing. I'm sorry about that. Will you speak into the microphone? Oh, certainly. I said excuse the coughing. My name is Fred Lickmacher. I'm here for Mario Franco, the appellee. The court covered almost everything that I was going to. But I'd like to read a couple of things. Arguable probable cause exists if either it was, one, objectively reasonable for the officer to believe that probable cause existed, or officers of reasonable competence could disagree on whether the probable cause test was met. Now, the problem here is no reasonable officer could believe that if the statement was made up, it was reasonable for him to rely on him or his colleague to rely on him. That just wouldn't work. So it really comes down to the factual question, which I know the court was inquiring about. Let me ask about the factual question for a minute, if I might. In the statement of undisputed facts, in the defendant's statement, they say plaintiff claims that Officer Gonzalez approached him from behind, grabbed him by the shoulders, turned him around, and said, are you hard of hearing, and then swore. Plaintiff claims he reacted by stepping back towards the vehicle and asking, what are you doing? I didn't do anything. Doesn't that suggest that in the moment the officer believed that he had actually given a warning? It tends to substantiate the notion that he believed a warning had been given. So we've been debating what the record says about that. But when he asks, are you hard of hearing, that certainly suggests strongly that he gave it. And I gather this was an undisputed plaintiff's claim that he was approached and that was said to him. Well, there were other parties that evening. It was a series of what was called pop-up parties, that is in the record, that were occurring in Syracuse. It was in Syracuse University on the campus, not so much the campus but the grounds, and the officers had chased people from several parties. The majority of them were people who looked like the plaintiff in terms that they were African-American young kids. And that could well be what that is about. Like I gave a warning someplace else? I'm sorry. This is part of a physical motion to the plaintiff, grabbing him, turning around, saying, are you hard of hearing? Doesn't that suggest that the officer, in fact, said something? Not necessarily at that time. Not necessarily at that party. Not necessarily. And if that's why the entire thing, if I knew this was going to be a salient issue, I would have been more detailed about it. I would have been into it. But I wasn't because, as I said, there were pop-up parties and kids were getting chased. So these kids, it could well have been about another party. It could have been about anything. So I don't really know. But I know this, that it's not correct that there's no contradicting facts. There were three people. Elijah Johnson was right there. He didn't hear it. Kenneth McFadden. What are we to make of this statement that one of the people there said the officer said to me, are you hard of hearing? That certainly suggests that the officer was saying the truth when he said he spoke. And that he thought that he spoke in a situation in which a reasonable officer would believe that somebody like the parties would have heard. The question for me is, is that evidence enough to make it clear that an officer would have believed this? Or is there enough evidence here, as Judge Scullin found, to make that a factual question? But that is the strongest undisputed, because nobody doubts that that was said, evidence that something was spoken. May I address that? The problem with that is, are you hard of hearing? What did he say he's hard of hearing about? Did he say... Well, in the context, it's hard to believe that he was saying hard of hearing as to anything else. Why would you, you know, I mean, people come up to me and say, are you hard of hearing? Because I've got very obvious hearing aids. But it's not something that you just sort of a policeman going up to somebody, hey, kid, are you hard of hearing? Well, he could have been about anything. Didn't have to be like, are you hard of hearing? I told you to disperse. Get out of here. I don't believe that's what the statement is. I do not believe that. So, you know, he could have been saying anything. He could have been saying, turn around. We don't know. Let me ask something else. This is not, I take it, you say, a situation in which one policeman said to another policeman, hey, I gave a frigging warning, and these people didn't leave. Because if that's the situation, then the second policeman would be justified, or at least would have qualified immunity in following the first one. But you don't have any situation of that sort? Not the fellow officer rule. No, that would be. I agree with you, Your Honor. But that's not what happened here. And, again, and it's very important to emphasize this because the court seems to be harping on it. There's nothing about what that statement was, are you hard of hearing, was about. I mean, I don't really know what it was about. I don't think the court does. It's going to be flushed out at trial. And, again, there's more than one person there who are making these statements. You know, they're saying, hey, this didn't happen. You know, they didn't say this didn't happen. I stand corrected. There didn't seem to be any reason to say that. They said, I didn't hear it. And, remember, they're in the car. They're right there. The window's open. That's clear. He's talking into the window of the car. The windows are open. And in their reply brief, I think it's on page four, he said the second announcement was made as he approached the car. So as he approached the car, they would have heard it if he had actually made the statement. He didn't make the statement, you know, to disperse. That's very clear here. You know, this is a little bit scary to me that an officer possibly could create, and I use the word lie, and I probably shouldn't have in my brief. My apologies. But it's a little scary that an officer could just pick something out of the blue and say it and say, oh, I had probable cause. Because if that's the case, almost every bad arrest scenario, and I'm not saying most officers would. It cannot be enough that an officer said I spoke if there is evidence to the contrary. I mean, that cannot be enough. That's a fact question. It's a question of belief one way or the other. And you say the officer may be lying. The officer may very likely be telling the truth. But that's the essence of a fact question. So the question is, is there enough evidence in doubt as to whether the officer spoke in a way that a reasonable officer would believe that your clients would have heard? That's what we're. The answer is no. The answer is no. You have three people there saying we weren't told to disperse. They're not told to disperse. And, you know, then the guy gets arrested and punched for, I know that's not relevant, for failing to disperse. You know, it's a frightening scenario because this kind of precedent is very scary for civil rights. If this is allowed to be precedent and any officer can suddenly make this up, all the malicious prosecutions, most of the denial of fair trials and all the false arrests go away. Hey, I told them to leave. Nobody else heard it. But he says he said it and they didn't do it. And the guy's got probable cause. You know, the probable cause has to be reasonable. You know, and it's not in this case. It's not in this scenario. One reason that I mentioned him running up to the porch or whoever it was, I'm sorry, talking to Guskey, the independent witness, hey, you saw it, he was resisting arrest. And she said, no, he wasn't. One reason I brought it up was it seemed like he was at that point trying to justify his actions because he knew they were wrong or whoever said it was trying to justify it for him. I'm pretty sure it was him, but Guskey doesn't get to see him at his death and couldn't identify him. So that also bodes in my favor, and that's why I put it in there. This is a factual matter that has to be determined by a jury. You're right, Your Honor, it's a difficult case. I'm sorry, in my practice I do all difficult cases. But in this case, they're very believable. I'm not making any factual argument here now, but legally. I'm making factual arguments to me, and I've been smiling because I've never been on a jury, so I don't know how I deal with factual arguments. But that's not the question before me. The question before you is, is there arguable probable cause? And again, I think this is a very dangerous precedent. If you say there is, the lesson will be given to any officer who may have been a rogue officer, and I'm not pointing my fingers at all officers, to say, hey, I could say this, and he didn't do it. No one else hears it. Bingo. Your time is up. Thank you. Counsel, you've reserved two minutes for rebuttal. Your Honor, I can see. Thank you. Sorry about that. I can see where you guys are struggling with some of the issues that were before the court, but in the interest of not being repetitive, unless you have any specific questions, I'll otherwise rest on my brief. Thank you. Thank you. Thank you, boys. Thank you. We'll reserve our decision.